**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **WESTERN ATHLETIC CONFERENCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO. SA-23-CA-00376-FB** |
| | ) | |
| **UNIVERSITY OF THE INCARNATE** | ) | |
| **WORD,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER REGARDING DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS AND PLAINTIFF'S MOTION FOR
FOR PARTIAL SUMMARY JUDGMENT**

Before the Court are Defendant's Motion for Judgment on the Pleadings (docket no. 30) and

Plaintiff's Motion for Partial Summary Judgment (docket no. 33), along with responses and a reply filed

by the parties (docket nos. 34-36).  The parties seek a ruling as a matter of law on Plaintiff's promissory

estoppel claim and breach of contract claim for $2 million in exit fees following the Defendant

university's decision not to follow through with a planned move to Plaintiff's athletic conference.  After

careful consideration of the entire record in this case, the Court is of the opinion that Defendant's

Motion for Judgment on the Pleadings should be granted and Plaintiff's Motion for Partial Summary

Judgment should be denied.

<u>Background</u>

The Western Athletic Conference ("the WAC" or "the Conference") is an intercollegiate athletic

conference whose member institutions compete against each other in NCAA Division 1 sports.

University of the Incarnate Word ("UIW" or "the Program") is a private university whose athletic

programs compete at the Division 1 level.

Before proceedings commenced in this Court, UIW filed suit against the WAC "in Texas state court in San Antonio . . . alleg[ing] that, in retaliation for UIW's decision to not join, the Conference terminated its affiliate membership in breach of the Affiliate Agreement." (Docket no. 33 at p. 12 fn.8).

The WAC then filed this case against UIW in federal court.  The Conference seeks $2 million in "exit fees" plus additional breach of contract and promissory estoppel damages based on UIW's decision to retain membership in the Southland Conference rather than follow through with a planned move to the WAC on July 1, 2022.

UIW moves for judgment on the pleadings on the WAC's promissory estoppel claim.  The parties agree this claim can be dismissed based on UIW's concession that the contract at issue covers the subject matter of this dispute.  To this extent, UIW's motion shall be granted and Plaintiff's promissory estoppel shall be dismissed.

The WAC moves for partial summary judgment and UIW seeks judgment on the pleadings on the Conference's claim for $2 million in exit fees. The parties agree: (1) the issue of "ordinary contract damages" survives these competing motions, (2) their motions can be considered at the same time because the WAC's exit fee claim involves cross-motions for judgment as a matter of law and they rely on the same contract, and (3) the language in the contract and incorporated bylaws is unambiguous and should be construed as a matter of law.  Finding no error, the Court proceeds accordingly.

The WAC contends it is entitled to collect $2 million in exit fees from UIW.  UIW contends it does not owe the money.  UIW additionally contends the Conference has failed to demonstrate the exit fee provision was part of the contract as executed and the fees constitute an unenforceable penalty. Because there is nothing in the Agreement or Bylaws that imposes any contractual exit fee consequences on UIW, it is not necessary to reach the latter issues.

<u>Legal Standards</u>

Rule 12(c) states: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Judgment on the pleadings is only appropriate when there are only questions of law and no disputed issues of fact. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). A court decides a motion under Rule 12(c) using the same standard it would use to decide a motion to dismiss under Rule 12(b)(6). *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007). Thus, the question for the Court is whether the WAC's complaint states a valid claim. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000). The Court must construe the claim in the light most favorable to the WAC and accept the WAC's factual allegations as true. *Id.* Although the Court is confined to the pleadings in determining whether the motion should be granted, *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes. FED. R. CIV. P. 10(c).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). A material fact is one that is likely to reasonably affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *See Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of demonstrating that no genuine dispute of material fact exists lies with the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

<u>Discussion</u>

In November of 2021, the parties entered a written Agreement (or "contract") pursuant to which UIW agreed to join the WAC as a member on July 1, 2022—the first day of the 2022-2023 athletic season.  But in late June 2022, just days before the start of the season, UIW backed out of the deal.

The Agreement, signed by the parties on November 11, 2021, begins by stating the effective date of the contract.  The opening paragraph reads:

> This Agreement is between the Western Athletic Conference, a Colorado nonprofit corporation ("WAC") and the University of the Incarnate Word ("UIW), a university located in San Antonio Texas.

> 1.   <u>Membership.</u>  Effective July 1, 2022, UIW shall become a member of the WAC (the "Effective Date).

(Docket no. 27-1 at Exhibit A, p. 1).  The only plausible construction of this sentence is that UIW would not become a member of the WAC before July 1, 2022.

The WAC contends UIW became a member of the Conference on July 1, 2022.  UIW notified the WAC on June 24, 2022, that it would not be commencing its membership as planned.  Because the Program reneged on the deal prior to July 1, 2022–the effective date of the contract–UIW did not become a member of the WAC on July 1st.

 The body of contract does not reference the $2 million in exit fees the WAC seeks from UIW.  For that, the parties direct the Court's attention to the Bylaws of the Western Athletic Conference ("Bylaws").  Notably, the Agreement intends to subordinate all of the obligations in the contract to the Bylaws "unless otherwise noted in this Agreement":

> 8.   <u>Relationship Between this Agreement and Other WAC Publications and/or Governing Documents.</u>  In the event of a conflict between this Agreement, the bylaws, and/or the rules and regulations, the terms of the bylaws and/or rules and

regulations will supersede and control over the terms of this Agreement, unless otherwise noted in this Agreement.

(Docket no. 27-1 at p. 2).

The WAC explains the exit fee it seeks to enforce is no windfall for the Conference.  "It provides essential funding for the WAC and its remaining Member Institutions to deal with the substantial costs and efforts necessary to unwind a Departing Member Institution's integration into the myriad schedules and complicated and time-consuming arrangements for that school's participation in competition across multiple sports in the Conference."  (Docket no. 33 at p. 2) (emphasis added).

Under the WAC's Bylaws—which were incorporated into the Agreement–when "any Member Institution" provides notice of its withdrawal from the Conference before July 1, the institution's withdrawal is not "effective" until the following June 30.  (Docket no. 27-2 at Art. II, § 9(a)).

Article II, Section 9 of the Bylaws states that a "Departing Member Institution" that has been a member for less than three years at the time its withdrawal becomes effective owes the WAC a $1 million exit fee.  (*Id.*).  The exit fee is doubled when the institution gives notice that it is leaving the Conference before the following June 30.  (*Id.* at § 9(b)).

The WAC argues it is entitled to $2 million in exit fees from UIW based on the Program's years of membership in the Conference and the timing of its notice that it was leaving the WAC.  The analysis however does not stop here.

UIW was at least a "New Member Institution" under the Bylaws.  The Bylaws provide that a New Member Institution is "defined and governed by Section 7 of this Article II."  (Docket no. 27-2 at Art. II, § 2(c)).  Section 7 states that "[a]n institution that has been approved for Membership in the Conference pursuant to Section 1(b) of this Article II [requiring approval by a vote of three-fourths of

the members of the Board of Directors] shall be identified as a New Member Institution from the time of its approval until its Membership commences." (*Id.* at Art. II, § 7(b)(2)). UIW became a New Member Institution of the WAC on November 11, 2021, when the parties agreed the Program would commence its membership in the Conference on July 1, 2022.

The ultimate question then is whether a New Member Institution is a Member Institution, and thus a Departing Member Institution, for purposes of the exit fee provisions in Section 9. It is not.

Article II, Section 7(c)(1) of the Bylaws unequivocally states that New Member Institutions shall not be considered Member Institutions:

> (1) <u>Such New Member Institution shall not be considered a Member Institution,</u> shall not be entitled to representation on any governing body, shall not be considered for the purpose of determining a quorum, and shall not be entitled to vote on any governing body.

(Docket no. 27-2 at Art. II, § 7(c)(1)) (emphasis added).

The WAC contends the underlined provision is only intended to mean that New Member Institutions may not vote on matters before Conference governing bodies and are not considered when determining the presence of a quorum. This proffered construction materially alters the meaning of the sentence by striking the words "considered a Member Institution," such that the sentence would read:

> Such New Member Institution shall not be . . . entitled to representation on any governing body, shall not be considered for the purpose of determining a quorum, and shall not be entitled to vote on any governing body.

Contract law in Texas provides that no language in a contract should be rendered meaningless in a court's construction. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015). When the sentence is read in full context, in addition to being prohibited from participating in governing bodies, New Member Institutions are not Member Institutions.

In addition to Section 7(c)'s prescription that New Member Institutions are not Member Institutions, other provisions in the Bylaws support this conclusion. For example:

* Article II, Section 4(b)(3) states that a New Member Institution that does not pay its dues "does not become a Member Institution." (Docket no. 27-2 at Art. II § 4(b)(3));

* Article II, Section 7(a) states that an "institution" that has been approved for Membership "shall be identified as a New Member Institution until its Membership commences." (*Id.* at Art. II § 7(a));

* Article II, Section 7(c)(2) states that "the provisions of this Section 7(c) shall extend to matters involving [qualifications for and invitation to] membership pursuant to Section 1 of Article II, but shall not extend to matters directly involving Departing Member Institutions (as defined in Section 9 of this Article II) or that might affect the financial interests of Departing Member Institutions." (*Id.* at Art. II § 7(c)(2)); and

* Article II, Section 7(d) states that New Member Institutions are not entitled to share in the distribution of Conference revenues to Member Institutions. (*Id.* at Art. II § 7(d)).

The WAC maintains Section 7(c)(1)'s statement (that "Such New Member Institution shall not be considered a Member Institution") "does not mean that a New Member Institution is not actually a Member Institution." (Docket no. 36 at p. 3). UIW responds that "this logic conjures the dubious wisdom of Humpty Dumpty in Alice in Wonderland." (Docket no. 35 at p. 4). "When I use a word,' Humpty Dumpty said in a rather scornful tone, 'it means just what I choose it to mean–neither more nor less.'" Lewis Carroll, *Through the Looking Glass* 364 (Macmillan & Co. 1897) (1892). The Court agrees and further finds Mr. Orwell's thoughts are apropos as well: "Doublethink means the power of holding two contradictory beliefs in one's mind simultaneously and accepting both of them." George Orwell, *1984* 32 (Martin Secker & Warburg Ltd.) (1949).

UIW contends the first statement in Section 7(c)(1) "simply reinforces the rest of Section 7(c)(1)'s language and Article II, Section 2(a), which make clear that a New Member Institution does

not enjoy the representation and voting rights that a Member Institution–and specifically a 'Member in Good Standing'–enjoys." (Docket no. 36 at p. 3). The entirety of Article II, Section 2 leads the Court to conclude that a New Member Institution holds a different status than a Member Institution, as opposed to being a type of Member Institution. Article II, Section 2 reads:

> <u>Section 2: Member and Affiliate Institutions</u>. Members of the Conference, excluding Affiliate Institutions, are sometimes referred to herein as "Member Institutions."
>
> (a)   *Status as a "Member Institution in Good Standing" is governed by the provisions of Article II, Section 6.* . . .
>
> (b)   An Affiliate Institution is participates in Conference competition and activities in one or more specific sports as provided, and with the obligations defined, in Section 5 of this Article II.
>
> (c)   *A New Member Institution is defined and governed by Section 7 of this Article II.*
>
> (d)   An Expelled Institution is defined and governed by Section 8 of this Article II.
>
> (e)   *A Departing Member Institution is defined and governed by Section 9 of this Article II.*

(Docket no. 27-2, Art. II, § 2) (italicized emphasis added). While not a model of clarity, the only reasonable construction of this language is that Article II, Section 2 establishes different categories of membership–and the rules governing New Member Institutions are different from the rules governing Member Institutions.

Conclusion

UIW entered into an express Agreement to become a member of the WAC. After signing the Agreement, but before it became a member, UIW backed out of the deal. There is no language in the Agreement that imposes any contractual consequences on UIW for its failure to complete its membership in the WAC.

Nor is there any language in the Bylaws which imposes a financial penalty on a New Member Institution which does not follow through.  Although a Departing Member Institution is subject to the exit fee provisions of Section 9, a New Member Institution is not considered a Member Institution, in this case until July 1, 2022, and thus cannot meet the definition of a Departing Member Institution under the Bylaws.

Accordingly, there is no basis in the Agreement or Bylaws for the WAC to collect $2 million in exit fees from UIW.  And there is not dispute that the WAC's promissory estoppel claim is subject to dismissal.  Therefore, UIW's motion for judgment on the pleadings must be granted and the WAC's motion for partial summary judgment must be denied.

IT IS THEREFORE ORDERED that Defendant's Motion for Judgment on the Pleadings (docket no. 30) is GRANTED such that Plaintiff's promissory estoppel claim and Plaintiff's breach of contract claim for $2 million in exit fees are DISMISSED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment (docket no. 33) on its breach of contract claim to recover exit fees is DENIED.

IT IS FINALLY ORDERED that Plaintiff's remaining breach of contract claims remain pending for disposition.

It is so ORDERED.

SIGNED this 21st day of March, 2024.

_____

FRED BIERY
UNITED STATES DISTRICT JUDGE

-9-